NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

VENTURES TRUST 2013-I-H-R, as )
successor in interest to JPMORGAN )
CHASE BANK, NATIONAL )
ASSOCIATION, )
)
        Appellant, )
)
v. )     Case No. 2D15-1923
)
ASSET ACQUISITIONS AND HOLDINGS )
TRUST, )
)
        Appellee. )
                              )

Opinion filed October 28, 2016.

Appeal from the Circuit Court for Lee
County; James R. Thompson, Judge.

Shaib Y. Rios of Brock & Scott, PLLC,
Ft. Lauderdale, for Appellant.

Matthew S. Toll of Toll Law, Cape Coral;
Steven K. Teuber of Teuber Law, PLLC,
Fort Myers, for Appellee.


LUCAS, Judge.

Ventures Trust 2013-I-H-R (Ventures Trust) appeals an order of involuntary dismissal entered at the conclusion of a nonjury trial.[1]  Because the court's order was premised upon an intervening party's impermissible assertion of a defense that had never been raised by any of the defendants, we reverse the court's order.

Washington Mutual Bank (WAMU) initiated the underlying litigation when it filed a complaint on December 18, 2007, to foreclose a Cape Coral residential mortgage given by Richard R. Woodard in exchange for a loan.  The subject promissory note and mortgage were executed by Mr. Woodard in favor of WAMU in 2006.  The complaint consisted of two counts: an action to reestablish the note, alleged by WAMU to have been lost or destroyed, and an action to foreclose the mortgage.  WAMU also recorded a lis pendens against Mr. Woodard's property at the time it filed its lawsuit.  Mr. Woodard was later defaulted and never sought to set aside the judicial default.

As is not uncommon in foreclosure proceedings, we find it necessary to briefly trace through a course of transfers before we meet the litigants at bar.  Indeed,

---

[1]Because the circuit court's order arose from a motion for involuntary dismissal made at the end of a nonjury trial and is styled—by handwritten interlineation—as a final order, we read the "without prejudice" language that appears within the order to mean merely that Ventures Trust could file a new lawsuit.  As such, we are satisfied that we have jurisdiction to review this order.  Cf. Deutsche Bank Nat'l Tr. Co. v. Quinion, 198 So. 3d 701, 702 (Fla. 2d DCA 2016) ("Because the order of dismissal both disposed of Deutsche Bank's complaint and required it to initiate a separate lawsuit, we have jurisdiction to consider this appeal.").  However, we reiterate that it would have been preferable for the circuit court to have rendered a final judgment at the conclusion of this nonjury trial, rather than an order of involuntary dismissal.  Cf. Deutsche Bank Nat'l Tr. Co. v. Kummer, 195 So. 3d 1173, 1175 n.2 (Fla. 2d DCA 2016) (noting that involuntary dismissal of a complaint after both parties had rested their respective cases in a nonjury trial was "not in keeping with the 'best practice' in nonjury trials" since the trial court "could have just as easily rendered a final judgment on the merits" (citing Advercolor Press, Inc. v. Graphic Sales Innovators, Inc., 307 So. 2d 899, 890 (Fla. 3d DCA 1975))).

neither the original plaintiff nor the original defendant would remain as parties in this case for very long. On March 19, 2008, Mr. Woodard filed a petition for bankruptcy in the Middle District of Florida. As part of the bankruptcy proceedings, he surrendered his interests in the Cape Coral property to the bankruptcy trustee, from whom the appellee, Asset Acquisitions and Holdings Trust (Asset Trust), eventually purchased the property at a bankruptcy trustee's sale in July 2013.

As it so happened, in 2008, WAMU was placed into receivership with the Federal Deposit Insurance Corporation (FDIC). Through the receivership, JPMorgan Chase Bank, National Association (JPMorgan) acquired WAMU, along with WAMU's interest in Mr. Woodard's note and mortgage. On March 18, 2013, WAMU filed a motion to substitute JPMorgan for itself as the plaintiff in this litigation, which the circuit court granted the next day.

For its part, Asset Trust filed a motion to intervene on November 12, 2013, which the circuit court apparently granted.[2] Then, on June 13, 2014, JP Morgan filed a motion to amend the complaint, which captioned Ventures Trust as the new party plaintiff and alleged that Ventures Trust was the holder of Mr. Woodard's note; the amended complaint also attached a copy of the note indorsed in blank as an exhibit.

---

[2]The motion to intervene was subsequently amended on August 11, 2014, and although, at the outset of the trial, Asset Trust's counsel represented to the circuit court that the motion had been granted at a case management conference on October 30, 2014, we can find nothing in the record that memorializes the court's ruling on this motion. We point this out not because we question the veracity of counsel's representation but rather the questionable basis for granting Asset Trust's motion to intervene, since, at the time it acquired its interest in this property, a lis pendens had been recorded in connection with the foreclosure lawsuit. But that objection was neither raised below nor in this appeal.

Our record is not entirely clear how this motion to amend was resolved, but we find in the record another minutes memorandum dated June 20, 2014, that appears to continue a case management conference and includes a handwritten notation next to the form's "Reason" blank that reads, "Leave to Amend Complaint." Although by no means obvious, given the record before us and in the absence of any alternative suggestion as to what else the circuit court's ruling could have been on this motion, we are inclined to read this as reflective of the circuit court granting JP Morgan's motion to amend.[3]

With the identity of the litigants and the operative pleadings seemingly settled, a nonjury trial was convened on March 25, 2015. Ventures Trust called the only witness who would testify in this trial. She verified Ventures Trust's status as the servicer of Mr. Woodard's mortgage and identified Mr. Woodard's original note to WAMU indorsed in blank, which was admitted into evidence. Asset Trust cross-examined the witness and raised various contentions concerning the timing of the indorsement on the note, which became pertinent with respect to a novel legal assertion Asset Trust raised before the circuit court as a substantive defense to the foreclosure

---

[3]We would pause here to observe that the circuit court's extensive use of handwritten memorandum notes and fill-in-the-blank form orders to render its rulings and this final order has, to some measure, protracted both the advocacy required of the parties before us and our review of the record. While we recognize and are sympathetic to the docket management pressures our colleagues on the circuit and county courts face, such a practice—although expedient—remains highly discouraged. Cf. Phillips v. State, 198 So. 3d 789, 790 (Fla. 2d DCA 2016) (reproducing handwritten arrow from a "snapout" memo of sentence/order of the court and observing that the Second District Court of Appeal has discouraged the use of such memos "for more than twenty years"); Woods v. Woods, 610 So. 2d 71, 71 (Fla. 4th DCA 1992) (noting that "[w]e also discourage the use of 'fill-in-the-blank' final judgment forms upon which the trial court enters handwritten rulings" in family law proceedings).

claim: that Ventures Trust, as the foreclosing plaintiff, had to not only prove its standing to enforce Mr. Woodard's note at the time of the trial, along with the standing of the plaintiff who had filed the original complaint—but also the standing of JPMorgan, as a substituted plaintiff, at the time JPMorgan became involved in the litigation. In response, Ventures Trust's trial counsel pointed out that Asset Trust had never filed an answer and that the issue of standing is an affirmative defense that must ordinarily be raised within a pleading or else is deemed waived.[4]

With respect to Asset Trust's legal argument, the court acknowledged, "[t]hat's a new one on me," but, by the end of the trial, appeared to accept its premise and granted Asset Trust's motion for involuntary dismissal. The court then entered the handwritten order that is now before us on appeal.[5]

"We review an order granting a motion for involuntary dismissal at the close of a case under a de novo standard of review." Deutsche Bank Nat'l Tr. Co. v. Kummer, 195 So. 3d 1173, 1175 (Fla. 2d DCA 2016) (citing Allard v. Al–Nayem Int'l, Inc., 59 So. 3d 198, 201 (Fla. 2d DCA 2011)). Likewise, we review a court's legal

---

[4]As a matter of civil practice, Asset Trust had no ability to file its own answer as an intervenor, see Bonafide Props. v. Wells Fargo Bank, N.A., 198 So. 3d 694, 695 (Fla. 2d DCA 2016), but Ventures Trust's broader point—that no defendant in the litigation had ever raised the issue of standing within a pleading—was essentially conceded.

[5]The order of dismissal recites no basis for the court's disposition, but within a minutes form memorandum, it appears the court determined that Ventures Trust failed to prove standing "at the time of filing"—by which, we glean from the court's various pronouncements at the conclusion of the proceedings, the court meant the time that the amended complaint was filed.

- 5 -

determinations in a nonjury trial de novo.  See In re Estate of Sterile, 902 So. 2d 915, 922 (Fla. 2d DCA 2005).

Although we discern several problems underlying the circuit court's order of involuntary dismissal, we will only focus on two.  First, Asset Trust should not have been heard to argue a defense that the defendant had never raised.  It is unclear why Asset Trust was permitted to intervene in these proceedings at all.  Cf. Market Tampa Invs., LLC v. Stobaugh, 177 So. 3d 31, 32 n.1 (Fla. 2d DCA 2015) ("[W]hen property is purchased during a pending foreclosure action in which a lis pendens has been filed, the purchaser generally is not entitled to intervene in the pending foreclosure action." (alteration in original) (quoting Bymel v. Bank of Am., N.A., 159 So. 3d 345, 347 (Fla. 3d DCA 2015)).  But having intervened, Asset Trust, like any intervenor, "must take the suit as [it] finds it."  See Coast Cities Coaches, Inc. v. Dade County, 178 So. 2d 703, 706 (Fla. 1965); see also Fla. R. Civ. P. 1.230.  As the First District observed, "[i]ntervention is a dependent remedy in the sense that an intervenor may not inject a new issue into the case."  Envtl. Confed'n of Sw. Fla., Inc. v. IMC Phosphates, Inc., 857 So. 2d 207, 211 (Fla. 1st DCA 2003); see also Fla. R. Civ. P. 1.230 ("[I]ntervention shall be in subordination to, and in recognition of, the propriety of the main proceeding . . . ."); Omni Nat'l Bank v. Ga. Banking Co., 951 So. 2d 1006, 1007 (Fla. 3d DCA 2007) ("The intervenor must accept the record and pleadings as they exist in the litigation and the intervenor may not raise any new issues.").  When Asset Trust intervened in the proceedings below, Mr. Woodard had already been defaulted, and the defense of lack of standing had never been asserted within any pleading.  See Dage v. Deutsche Bank Nat'l Tr. Co., 95 So. 3d 1021, 1024 (Fla. 2d DCA 2012) (affirming final judgment of

foreclosure and observing, "[l]ack of standing is an affirmative defense that must be raised by the defendant[,] and the failure to raise it generally results in waiver," and "[a] default terminates the defending party's right to further defend, except to contest the amount of unliquidated damages" (quoting Phadael v. Deutsche Bank Tr. Co. Ams., 83 So. 3d 893, 895 (Fla. 4th DCA 2012)).  Asset Trust could not, then, as a mere intervenor, inject an unpled, waived defense of a defaulted party for the circuit court's adjudication.

Secondly, even if the argument Asset Trust raised had been framed within a pleaded defense, it would have been meritless.  For purposes of standing, Ventures Trust would only have needed to demonstrate its standing to enforce the note and mortgage at the time of trial and WAMU's standing at the time the complaint was first filed.  See Corrigan v. Bank of Am., N.A., 189 So. 3d 187, 189 (Fla. 2d DCA 2016) (en banc) ("A plaintiff alleging standing as a holder must prove it is a holder of the note and mortgage both as of the time of trial and also that the (original) plaintiff had standing as of the time the foreclosure complaint was filed." (quoting Russell v. Aurora Loan Servs., LLC, 163 So. 3d 639, 642 (Fla. 2d DCA 2015))).  Asset Trust cites no legal authority that suggests yet a third temporal point for required standing in foreclosure proceedings—a prior, substituted plaintiff's at the time of a court-ordered substitution— in order for a holder to enforce a mortgage.  And we are loathe to engraft something so unheralded (and unwarranted) upon what is, now, a well-settled facet of foreclosure

- 7 -

law.[6]  To the extent the circuit court's order proceeded from this erroneous view of the law of standing in foreclosure proceedings, it must be reversed.

Accordingly, we reverse the order of the circuit court and remand this case for further proceedings consistent with this opinion.

NORTHCUTT and CRENSHAW, JJ., Concur.

---

[6]See Corrigan, 189 So. 3d at 189; Dickson v. Roseville Props., LLC, 198 So. 3d 48, 50-51 (Fla. 2d DCA 2015) ("For better or for worse, it is settled that it is not enough for the plaintiff to prove that it has standing when the case is tried; it must also prove that it had standing when the complaint was filed.").  Moreover, whatever the merits (Asset Trust has left us to guess what they might be) for such a rule, requiring a separate showing of standing by a prior, substituted party at the time of substitution strikes us as nonsensical; under the law, a substituted plaintiff "acquires the standing of the original plaintiff" when it is substituted.  Assil v. Aurora Loan Servs., LLC, 171 So. 3d 226, 227 (Fla. 4th DCA 2015) (quoting Kiefert v. Nationstar Mortg., LLC, 153 So. 3d 351, 353 n.4 (Fla. 1st DCA 2014)).